Roberts, J.
—The first question is upon construction of the deed from Wood to Garrett. The land conveyed in that deed is described as follows: “Beginning at the west corner of the Gonzales survey; thence south, 45° E., to Bridges’ corner; thence north, 45° E.,to Bridges’ corner on Thorn’s line; thence north, 45° W., to the south boundary line of the Esculan survey; thence south, 45° W., to the beginning; to include five hundred and seventy-one acres of land, and if said point will not include sufficient of land to make the complement, (571 acres,) it is to run north, on the said Esculan survey, for deficit.” This deed was executed on the 23d day of September, 1852. The ^Gonzales league, in the west corner of which this land is situated, was partly owned by Thorn, and a division line between him and Wood was agreed on, and run out sometime in 1852. It does not appear that it was not before Wood made the deed to Garrett. There is nothing to show that Wood did not then know where that line would run, or had been run, when he called for Bridges’ corner on that line. The right of *18 Bridges to the land run out for him in the summer of 1852 does not appear. It may have depended upon a verbal contract, or its limits may have depended upon the line to be run for Thorn; so that, as soon as the Thorn line was settled upon, "Wood may have known that Bridges’ line could not run further than the Thorn line, and, therefore, called for the Bridges corner on the Thorn line, knowing that it must be fixed there, when Bridges’ land should be run out, so as not to interfere with Thorn’s land. The Esculan league lay adjoining this land, conveyed to Garrett in the Gonzales league, and it must be presumed from the terms of the deed, it belonged also to W ood. If the boundary designated should not include five hundred and seventy-one acres, the deficiency was not to be made up by encroaching iipon Bridges on the southeast, or Thorn on the northeast, (even if Wood had the legal right so to do;) but by extending Garrett’s boundaries over upon the adjoining Esculan league. The expression that “it is to run north on the said Esculan survey,” is not strictly accurate, as the Esculan survey lies northwest of the Gonzales survey. This inaccuracy may be accounted for by observing, that the main body of the Esculan league (as presented to the eye on the map) lies due north of the tract designated in Garrett’s deed.
There is nothing in the case, as here presented, therefore, to show that Wood, when he made the deed to Garrett, did not know, either where the comers called for were, or where they must necessarily be, considering the rights of Thom and Bridges. With this knowledge, he conveys to Garrett a tract of land, with certain fixed or determinable corners and boundary lines, within the Gonzales league; which are to be varied upon only one condition: that is, if the tract designated should be less than 571 acres. In that event, there is provision made for extending the boundaries of the tract over upon the Esculan league, until • the deficit should be made up. But in no event is it provided that the boundary designated within the Gonzales *19 league should he contracted. The terms of the deed indicate a clear intention of the grantor to convey all his land, in the west corner of the Gonzales league, bounded on one side by Bridges’ line, and on the other side by Thorn’s line. It is equally clear that it was intended that this tract, thus bounded, should contain 571 acres; and, if not, the deficiency should be supplied by addition from the Esculan league. But it is not equally clear that it was intended that the boundaries of this tract should be curtailed, if there should be more in it than 571 acres. Because—
1. There is no certain evidence that the land was sold by the acre.
2. There are no words used to express an intention to restrict the conveyance to just 571 acres, and no more.
3. Had such been the intention of the grantor, there could have been no difficulty in expressing it.
4. Wood describes the lines and corners as if he knew them to exist, or as if he knew facts from which they were easily and certainly determinable; and it is not shown that such facts were not then known by him; and, therefore, we cannot say that the call for Bridges’ corner on Thorn’s line was entirely conjectural.
5. Although the terms of the deed induce the supposition that the grantor may have intended to sell out of the west corner of the league 571 acres of land, they, are more appropriate to indicate an intention to sell a particular tract, bounded by the designated calls within that corner, if it should contain 571 acres. It being made manifest that the calls of boundary in the deed were merely conjectural, and that the land was sold by the acre, or that just so many acres, and no more, were intended to be conveyed, there is no authority for restricting the title of Garrett to just 571 acres of the land described in the deed, and excluding therefrom the excess of eighty acres, which is claimed by the appellants.
The remaining question arises upon the proof adduced ■ *20 to sustain the plea of the statute of limitations of three years. To complete the proof of that plea, it was necessary to be shown, to the satisfaction of the jury, that the possession of the land by Bridges was a holding by a tenantcy under Jones.
The testimony of Bridges, in support of that position, ■ was, that “Jones’ agent proposed to rent the place to him, and he refused to rent it, because there was some talk of Garrett’s coming and claiming the land', and he would not stand a lawsuit about it, but agreed to buy the improvement, and did so, and was to give $20 if he kept the place one year, and if he kept it two years he was to give $35, and for the balance of the time, if he kept it longer, he was ' to pay nothing.” He kept it under that contract two years. The practice of buying and selling improvements which are made upon the land of other persons, or upon vacant land, was doubtless well known to the jury that tried this cause. They judged this to be an instance of that kind, and not a renting by Bridges, or a holding under Jones as his tenant.
We cannot say that their conclusion was incorrect.
Judgment affirmed.